The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be allotted to counsel. The first case today is United States v. Damon Austin, appeal number 19-2257. Attorney Levchuk, please introduce yourself for the record and proceed with your argument. Thank you. May it please the court, my name is Andrew Levchuk and I represent the appellant Damon Austin. I'd like to reserve one minute for rebuttal if I may, Judge. Yes, you may. Yes. The appellant raises two claims, the first of which relates to the warrant that was served on his home in which a number of firearms were seized. We claim that the affidavit in support of the warrant relies almost exclusively on a witness who was biased and had an interest which was adverse to my client, Mr. Austin. And that more should have been done to corroborate the allegations made by that witness, Christopher Brown. Now, wasn't Mr. Brown actually also characterized as a victim? He could be characterized as a victim, but that is in a very limited sense because he's also a co-conspirator and one seeking to offload blame for criminal activity on Mr. Austin. So, as we argued in our reply brief, he is not the classic crime victim in the sense that the court has recognized a crime victim statement alone can provide probable cause for a search warrant. What is your best case, what is your home run case for your proposition that the fact that a victim might have some criminal exposure somehow undermines the search warrant application? Your Honor, I have no home run case, but I have cases that say Acosta, for example, which we cite on page three of our reply brief, talks about circumstances that would raise a reasonably prudent officer's antennae. And it's cited by the government, but in Acosta, you had an unbiased witness. Here you have not only someone who's a co-venturer, but who is being confronted by police who responded to an emergency call and they, in confronting him... Which was his emergency call, was it not? I believe it was his wife's emergency call. His wife's emergency call, yes, okay. Was, in fact, trying to offload his own blame and put it on my client. Isn't that somewhat undercut, counsel, by the fact that his statement to the officer was, in some respects, self-incriminating? That he admitted to his participation in criminal conduct, which we have found is usually a badge of authenticity? It can be a badge of authenticity in some cases, but it is not invariably a badge of authenticity. And in this particular case, you had someone who, while admitting his participation, is saying, in effect, this guy's far worse, go check out his house and see what you'll find. Five minutes remaining. And in that respect, I would say it is a different case. He didn't quite say, you see what you'll find, he said you'll find drugs and guns and he keeps them in a safe. And at least to the extent as to whether or not the defendant had a safe in his house, that's corroborated by a third witness. It is corroborated by the third witness, but there's a question, and that really gets to the second part of our argument. Where there are different reports about that witness's willingness to talk and whether or not she invoked her Miranda rights. I think the government's case hangs on that piece of corroboration. That is very powerful, I agree with you, Your Honor. But as I laid out in the briefs, there are statements that she makes which are reflected in Officer DeFrancesco's affidavit. But that wasn't available to either the attesting officer or the magistrate at the time the search warrant was issued, right? Well, DeFrancesco's affidavit was the affidavit in support of the warrant. But Judge Salyer, there were other reports. Yeah, I know that. And I understand, you're correct, they were not available. But the question is, they talk about facts which occurred, what the facts were prior to DeFrancesco submitting his affidavit. But it's hard to say that an affidavit is intentionally false because it is contradicted by another document that doesn't exist and can't possibly be known to the witness or the magistrate at the time the warrant was issued. But the other document didn't exist, but the facts underlying that document either occurred or didn't. That's the key. Well, in any event, didn't Judge DeClerico say that any inconsistencies were immaterial? He implied that. I think he said it in his memorandum. Yeah, but we would disagree with that only because if you accept our initial proposition that relying on Christopher Brown was not sufficient and you have to get to the corroboration for Ms. Phillips, then it seems to me you are in a position where either she invoked her Miranda rights and said nothing, as one report says, or she made the statement that she did. And if she invoked her Miranda rights, and yet there's seemingly a statement in here talking about safes, that's a real conflict. And we raised enough of a question under Frank's to where there at least should have been a hearing. Mr. Lubchock, the government argues, as you know, that the defendant failed to preserve his Frank's claim below. Is there any indication apart from the district court order that Austin, in fact, raised the issue of Frank's hearing before this appeal? The discussion is in terms of the good faith exception to the exclusionary rule. Understood. But he repeatedly raised a request for a hearing. And while he didn't cite Frank's, the government's correct on that. He implicated it sufficiently enough that the district court, whose opinion on this point, I think we should credit, understood him to be making a Frank's claim. I just wanted to touch on the other issue very briefly. I know this court has ruled on a number of the post-Raheif cases. I would just point out that the Fourth Circuit in United States v. Gary has found that an erroneous plea colloquy, failing to lay out the proper elements of 922, is found in Raheif is structural error. What difference does that make because we held in Farmer to the contrary and this panel is bound by Farmer. Are we not? You are bound by Farmer. I'm not expecting a favorable ruling from this panel. I'm simply preserving the issue because the Supreme Court… You've done that in your brief. You've preserved the issue. Thank you. And so I have nothing further unless the court has any questions. No, thank you. Thank you. Attorney Lovechuck, at this time you can mute your device, audio and video. And Attorney A-Frame, you can introduce yourself on the record. Good morning. Seth A-Frame to the United States. I will begin the probable cause analysis I think should apply in this case. So on the top level, this individual is not an informant. He is a witness. He is a victim. And as I lay out, the case law in the circuit says that that testimony of a victim witness alone can be sufficient to support probable cause. The argument in response is, well, they were in a fight and so he was biased. And I think what's most important here is that was in the affidavit. The magistrate was aware of his victim witness status, was aware of the circumstances that made him a victim, and was able to evaluate all of that in deciding whether there was or was not probable cause. But even if we applied the rules that we use for confidential informants, I think there's enough here that there still would be probable cause under the criteria that have been set. So number one, there was a face-to-face interaction between Officer DeFrancisco and Mr. Brown. This court has said many times that that is something that supports credibility because it allows the officer to judge the person who's making the allegations and that that's important. Second, there were statements against interest here. He bought drugs. He got a knife. He threatened to kill someone. Those are all potentially crimes. And he admitted to those as he was telling Officer DeFrancisco what happened. That, too, is an indicia of credibility. Third, there was a specific description provided by Brown of the defendant's residence. He didn't just say there were guns in the house. He described where the guns were, how the house was laid out. And this court has said, I know in the Greenberg case, that where the discussion is specific, where the statement by the informant is specific, that adds credibility as opposed to making some general sort of statement that really anybody could make. And that specific statement was partially corroborated by the girlfriend who owned the house, who confirmed that there were two safes in the house. One belonged to her. One belonged to the defendant. So even if the court didn't accept the government's characterization of the witness and victim rule as being enough to resolve this matter, when you look at the specifics of the affidavit, they also check the boxes that we use to determine whether an informant's statement is good enough. So no matter how you look at this case, which legal framework you apply, I think all roads lead to there was probable cause. Could you address, counsel, Mr. Lepchuk's discussion of the Tanya Phillips evidence? He makes the argument that Tanya Phillips cannot both have waived and invoked her Miranda rights, and that the truth of Officer DeFrancesco's affidavit is therefore suspect. Right. So, of course, the answer to that is you can both waive and not waive your Miranda rights, because you can be given your Miranda rights multiple times. And I think when the court looks at the record closely here, it's going to see that the reports are dealing with multiple times in the interaction that happened here. So it begins roadside, and the Gerstein affidavit says roadside, she invoked. Then she's brought into the cruiser, and one of the reports says in the cruiser she made some statement but denied the presence of guns at the scene. Then she's brought back to the police station, and she's interviewed again where she does waive Miranda. She makes a more detailed statement, still denying the guns. All of that gets into, is in DeFrancesco's affidavit. DeFrancesco says she also talks about the safe. Now, looking at the reports, the other officer in there, Officer Mulcahy, it appears was in there for the statement, and he doesn't write about the safes in his report. I would note that the safes only take on meaning if you interviewed Mr. Brown, who's talking about safes, and you're interested in searching the house. So Mulcahy, who's trying to figure out was there a gun on scene, didn't write down anything about the safes. But the safes only matter if you know what Brown said. DeFrancesco knows all of that. The search warrant affidavit specifically says, I, DeFrancesco, was in the room. Here's all the stuff that he said, and that to me is, you know, there's nothing to say that he's lying about what he heard. There's just nothing that supports that. So this idea that Miranda was waived and not waived, that's true because there are multiple spots along the timeline when there were efforts made to interview the person. You heard your brother's response to the question regarding whether the Franks was specifically raised, and certainly the district court decision addresses the Franks issue. You argue that the Franks claim was not preserved. Could you respond to that? Sure. I mean, I don't think that saying, so I agree that the judge went on and determined whether he should have a hearing. But as far as preservation, and maybe the court said, well, that's enough if the judge understood it. But it strikes me that when you raise a Franks hearing, you have to make a substantial preliminary showing. That's a huge part of the Franks doctrine. And that requires certain showings on two prongs. One, real evidence that something, you know, reckless or false happened. And two, that it was material to the probable cause finding. And frankly, neither of those were really argued here. It was basically, if you find there was no probable cause, right? If you find judges no probable cause, then under Leon, you shouldn't give them good faith because there were inconsistencies in the warrant. But none of this was framed. And I think it needs to be under Franks to make the substantial preliminary showing. And that's why I argue that the claim is not preserved. I do understand what the district court did, which is why I certainly didn't rely entirely in my brief on plain error. I went on to take on the merits. But I do think it's important that defendants make this preliminary showing because that's what Franks is all about. You don't just have to ask for a hearing. You have to show things before you get that hearing. And I don't think an effort was even made to do that here. Regarding Mr. Austin's, the defendant's, knowledge of his felony status, there are references to his being booked. And does the record demonstrate that he actually at some point acknowledged that he was a felon? I don't believe, at least my recollection, and perhaps I'm wrong, but I don't believe that in the interview process he admitted to being a felon. I think they determined that from records at the early part of the case. What I talk about in my brief is that he, in fact, served a 30-month sentence for one of these crimes. So to say that he didn't know he had been convicted of a crime punishable by more than a year when he served a 30-month sentence isn't really credible, I would say. And it's the kind of fact this court has relied on in its post-Rahafe cases to say that you can't meet the plain error. There are requirements that you need to get relief. Mr. Alframe, I'm interested in this issue of preservation under Franks. At least at the circuit court level, we distinguish and find waiver in two different situations. One is failure to mention an argument at all, and the other is failure to develop an argument. You seem to think it's important that we require people not just to mention a hearing but to go further than that and frame for the district court the two issues that you just outlined. Why is that important? Because when we look at Franks, Franks has two concerns. One is truthfulness in affidavits. The other was the regularity of affidavits assumed in the law in this area. And so there is a standard, there is a preliminary showing that has to be made with evidence, with facts, just to get in the door of a Franks hearing. So I think if you're looking for the Franks hearing, it is incumbent upon the defendant to set forth the factual basis for which a real issue of both recklessness or falsity and materiality is established. It's not enough to just assert those things. They have to be developed to get to qualify for a Franks hearing, which is different, I think, than other areas. And if we look back at Franks, it really does talk about this two-step process, which has significant purposes in protecting from this becoming, well, I can just do discovery into what the government did by asking for a Franks hearing. So as I understand the record here, there was never a direct reference to Franks. There was merely a request for a hearing, and then the district court in denying makes an assumption that he's raised a Franks issue. Is that correct? Yes. He raises the concept of that there were inaccuracies in the affidavit. Leon, which is a different doctrine, talks about one way that Leon will not apply is if the affidavit contains misstatements. And he asserts that if you don't find probable cause, then you shouldn't apply Leon good faith because there are misstatements in the record. There's no discussion of materiality. Okay. Thank you. But you see, Mr. Efrain, there's an awkwardness about this. One of the purposes of the waiver doctrine is that we won't decide issues that weren't fairly presented to the district court. We hold the party who is urging the issue responsible for presentation of that issue to the lower court. But the calculus is somewhat different. Whereas here, the defendant arguably fails to meet his threshold burden, but the district court nevertheless decides to tackle the issue. I hear you, Judge Selya, and I'll tell you that this all appears in footnote two where I say that the defendant did not preserve this issue, but even if he did, the claim fails, which I think was a signal to you that I understand all of that. But I do think it's important that we recognize what Frank's is and that defendants make these showings. Okay. And I did not base my argument on waiver as really how this court should resolve the case. Thank you. Thank you. Thank you. Thank you. Thank you. You can mute your device at this time. Attorney Levchak, please reintroduce yourself on the record. Thank you. Andrew Levchak, just a couple of brief points. The government relies on Greenberg, but as we pointed out in footnote one of our reply brief, that case is about a self-incriminating statement about an informant known to the authorities. But in Greenberg, the investigators had already observed illegal activity at the dates and times where the informant told them it would occur. So that was a case where there was corroboration. So it really doesn't apply here where the question is, can you simply believe the informant? So Greenberg is really not helpful to the government in my view. Second, in terms of Frank's, all you have at the time you're making a Frank's argument or any sort of ability or attacking a warrant are the discovery reports. And they were all attached to the motion. And I think it would be unprecedented, at least I'm not aware of any case where a district judge has understood a defendant to have made a certain argument. And this court finds that the district judge was wrong and the defendant really didn't make that argument. Just one example, the defendant would always be able to seek rehearing or file a new motion if he hasn't preserved something. But when a judge understands him to have preserved it, it strikes me that that really puts the defendant in a position where he won't raise it again during the district court litigation. So I think for all of those reasons, the court should reach the merits and not apply plain error review. And then in terms of Judge Katzman, you are correct. Judge Katzman, you're correct. On the record, the defendant did say at one point during the interviews that he knew he was a felon. But in the plea colloquy, which is also included in the appendix, he refers to being at some point having a history of mental disorders. And so that would still leave open the question of what he really knew or didn't know, I suppose. Thank you very much. Thank you, counsel. Thank you. That concludes argument in this case. Attorney Lovecheck and Attorney Afframe, you should disconnect from the hearing at this time.